# SUPREME COURT.

## PATRICK C. SARSFIELD, agt. THE METROPOLITAN INSURANCE COMPANY.

Where the terms and conditions contained in a *policy of insurance*, are declared to be a part of the contract of insurance, the description of the building or buildings therein is a *warranty* that they are what they are described to be, and are used as such exclusively.

Where the insurance was for $2,000 on a "two story frame dwelling house, situated on the north side of Center Street, Hornellsville, N.Y.," and the contract provided against carrying on any business therein denominated hazardous, or extra hazardous, during the continuance of the policy, and it appeared in proof that the business carried on in a portion of said dwelling-house at the time of the fire and loss, was a billiard saloon, and in other portions a restaurant and bar, *held* that this was sufficient to defeat any recovery, on the ground that the warranty had been broken.

And the defendants were not estopped from setting up this breach, for the reason that the misdescription, if any, was the defendant's act through its authorized *agent*—where there was no conflict in the evidence, but all the evidence there was on the subject of what took place at the time the contract was made, was from the plaintiff himself, and he stated that the agent said he was well acquainted with the building, and could not go down and see it—that he then told the agent that the upper part was used as a billiard room. and the lower part as a dwelling house; that thereupon the agent made out the papers and delivered them to plaintiff.

*Held* that if the verbal information given by the plaintiff at the time, as to how the building was then used could be held to be sufficient knowledge on the part of the agent to create an estoppel against the defendant, the whole business carried on there was not disclosed; as in addition to the billiard room up stairs, there was one billiard room below, and a bar, and a restaurant or eating saloon, kept there.

The question of the competency of *parol evidence* to change the contract, was not raised upon the trial by the defendant—the plaintiff appears to have given his testimony without objection. The authorities distinctly hold that parol evidence of what was said between the agent and the insured at the time the contract was entered into, could not be given by the insured on the trial to change the contract, even when he had been led by representations on the other side, unintentionally into making a warranty which was not true.

*Fourth Judicial Department, General Term, March,* 1871.

*Present :*—MULLIN, *P. J.,* JOHNSON *and* TALCOTT, *J. J.*

MOTION by plaintiff for a new trial on exceptions to order directing a non-suit, ordered to be heard in first instance at general term, and judgment in the meantime suspended.

Action upon a policy of insurance, for loss by fire of a building used as a dwelling house and billiard saloon, in Hornellsville, N. Y.   Amount of insurance and loss, $2,000. Tried at the Allegany circuit, October 16th, 1869.   The plaintiff procured the insurance from I. N. Stoddard, defendant's agent at Wellsville, N. Y., and who countersigned the policy.   Other facts will appear in the opinion.

> HAKES *and* STEVENS, *for the plaintiff.*
> ·BEMIS *and·* NEAR, *for the defendant.*

ʼ    *By the Court,* JOHNSON, *J.*   The action was upon a policy of insurance, to recover a loss occasioned by fire within the time covered by the policy.

The plaintiff was non-suited at the trial.

The building was insured as a dwelling house only, and it appeared by the plaintiff's own showing on the trial, that at the time of the fire and loss, a part of the building was used as a billiard saloon, and another part as a restaurant and saloon, and that it had in it a bar, where people drank, and where beer was sold by the occupants.   The insurance was for $2,000 on the plaintiff's "two-story frame dwelling "house, situated on the north side of Center Street, Hor- "nellsville, N. Y."   The contract provides that if, at any time during the period for which the policy would otherwise continue in force, the premises shall be used " for the pur- " pose of carrying on therein any trade or occupation,. or for " storing or keeping therein any articles, goods, or merchan- " dise denominated hazardous, or extra hazardous, in any " of the printed classes of hazards annexed to this policy, " except as herein specifically provided for, or hereafter

" agreed to by this corporation in writing upon this policy, " from thenceforth, so long as the same shall be so used, this " policy shall be of no force or effect." Amongst the printed classes annexed to the policy and denominated extra hazardous, are " billiard saloons and their contents"—"eating houses"—"lager beer saloons, liquors in glass, bar rooms, " porter houses, and restaurants—to be charged twenty-five " cents and upwards per $100, in addition to rate of premium " on building, except in dwellings of the 1, 2, and 3 " classes."

These terms and conditions are declared to be a part of the contract:—That this description of the building is a warranty that the building was a dwelling house, and used as such exclusively, and that no trade or occupation was carried on in it which was denominated hazardous, or extra hazardous in the body of the policy, and in the printed classes of hazards therein is well settled (*Wall* agt. *The East River Mutual Ins. Co.*, 7 *N. Y.*, 370, *and cases cited*). The business carried on there at the time of the fire, of using a portion of the building for a billiard saloon, and other portions for a restaurant and bar, increased the risk, and enhanced the rate of premium.

Ordinarily, this would be sufficient to defeat any recovery on the ground that the warranty on the part of the plaintiff had been broken.

But the plaintiff's counsel insists that the defendants are estopped from setting up this breach, for the reason that the misdescription, if any, was the defendant's act through its authorized agent. There is no conflict in the evidence. All the evidence there is on the subject of what took place at the time the contract was made, is from the plaintiff himself. The contract was not made at the place where the building was situated, but at a place several miles distant. He says he made the application, and the agent asked him to go down with him to Hornellsville, where the building was situated, and get it insured right off. That he told the agent

he could not go, but asked him, the agent, to go and see it. That the agent said he was well-acquainted with the building, and could not go down. That he then told the agent that the upper part was used as a billiard room, and the lower part as a dwelling house. That, thereupon, the agent made out the papers, and brought them to him in the afternoon of the same day; that he put them into his desk without any examination, and the next day paid the premium. He further testifies that he did not know of the printed conditions in the policy until after the fire. It seems to me this is rather too loose to be allowed to create an estoppel against a clear breach of warranty. If the mere declaration of the agent could be allowed to prove anything on the subject of his actual knowledge, it was only that "he was well-acquain- "ted with the building," not with the business that was carried on inside. Again : if the verbal information given by the plaintiff at the time, as to how the building was then used, could be held to be sufficient knowledge on the part of the agent to create an estoppel against the defendant (in regard to which it is unnecessary to express any opinion), the whole business carried on there was not disclosed.

The plaintiff, upon his own showing, only informed the agent that the upper part was used as a billiard room, and the lower part as a dwelling house, whereas it appears quite distinctly, that in addition to the billiard room up stairs there was one billiard room below, and a bar, and sufficient evidence to authorize the judge to hold, as against the plaintiff, that beer was sold at this bar, and a restaurant or eating saloon kept there, inasmuch as there was no request on the part of the plaintiff to have the case submitted to the jury on those questions. What the agent said to the plaintiff five or six days after the contract was made was clearly no evidence in the case for any purpose.

Had it been made to appear clearly that the agent before making the insurance papers had been into and examined the building, and seen, or been there informed truly as to the

nature of the occupation, and the business there carried on, and then made out these papers and delivered them to the plaintiff as containing a sufficient description of the building thus occupied to constitute a valid insurance thereof, I think the defendant would have been estopped from denying that it was valid for that purpose within the cases of *Rowley* agt. *The Empire Insurance Company* (36 *N. Y.*, 550) ; *Benedict* agt. *The Ocean Insurance Company* (31 *N. Y.*, 389) ; *and Plumb* agt. *The Cattaraugus Mutual Insurance Company*, (18 *N. Y.*, 392).

The question of the competency of parol evidence to change the contract was not raised upon the trial by the defendant. The plaintiff appears to have given his testimony without objection. The case last cited, and also the preceding case in the same volume, of *Brown* agt. *The same defendant* (18 *N.Y.* 385), distinctly hold that parol evidence of what was said between the agent and the insured at the time the contract was entered into, could not be given by the insured on the trial to change the contract, even when he had been led by representations on the other side, unintentionally, into making a warranty which was not true.

On the whole, I am of opinion that the non-suit was properly granted, and that a new trial should be denied.