THE TEXAS BANKING AND INSURANCE CO. v. STEPHEN W. STONE.

1. WARRANTY—DESCRIPTION OF INSURED PREMISES.— No technical words or form of expression are necessary to constitute a warranty. Words of affirmation, or statements imputing conditions or undertakings on the part of the insured, relating to the risk or affecting its character and extent, upon which it must be inferred the insurer contracted, will ordinarily be construed and held to be a warranty.

2. CONSTRUCTION—"OCCUPIED AS A STORE-HOUSE."—Where there are other words in an insurance policy to identify the building which contained the property insured, the terms "occupied as a store-house" have been held to express a fact relating to the risk, and cannot be regarded as employed for any other purpose, and implied that the house was not occupied for any other purpose than that thus stated.

3. PAROL EVIDENCE.—Parol evidence is admissible to show that insur-

ers or their agents are responsible for an omission or improper statement of matters in the application, which are referred to and made matter of warranty in the policy, when such warranty is relied on to defeat an action on the policy, and to show that the insured is in no way responsible for, or has contributed to, the mistake, but has relied on the insurer or his agent to prepare the application and policy, and did not, in fact, know of the mistake or omission, and that the insurer or agent knew the facts as they existed when the policy was issued, and so is estopped from setting up the breach of the warranty as a defense.

4. SAME—PLEADING.—Such facts should be pleaded in reply to the breach of warranty pleaded in defense ; and, in the absence of such allegations, and when such testimony, not objected to, was admitted, and by charge of the court was made a controlling issue, and a verdict based on such testimony and charge was rendered, a judgment thereon will be reversed.

APPEAL from Galveston.   Tried below before the Hon. A. P. McCormick.

This is an action brought by Stone, in the District Court of Galveston county, February 11, 1873, on a policy of insurance issued by the Texas Banking and Insurance Company, February 17, 1872.   The policy, in the usual form, bound the appellant to insure the plaintiff against loss or damage by fire for one year from its date, February 17, 1872, on " his stock of stoves and fixtures, and such other merchandise as is usually kept in a hardware store, all contained in the one and two story metal-roof frame building, situated on Marshall street, on lot number 6, in block number 21, in Jefferson, Texas, occupied by the assured for mercantile purposes, and one room by tenant for a sleeping-room; special reference being had to assured's application, number 1421, which is his warranty and a part hereof."

The policy contained a printed clause stipulating for the avoidance of the contract in case the premises were occupied for purposes denominated hazardous or extra-hazardous, in the memorandum of special rates annexed to the policy. Among the occupations so described as hazardous, in the memorandum referred to, was that of " taverns."

Defendants demurred, pleaded a general denial, and specially, that the insured had warranted the occupation of the premises to be none other than was set out in the policy; that, on the contrary, it was occupied in part by Mrs. Prewitt as a boarding-house, and that thereby the risk was materially increased; and that by reason of this breach of warranty the appellant was released from the contract. There was no replication to this plea.

In October, 1871, the premises were occupied as stated in the policy sued on. At that time, Stone obtained insurance on the property destroyed, in the Georgia Home Insurance Co., from Lewis & Anderson, the local agents of said company at Jefferson. Subsequently to the issuance of this policy, and prior to the issuance of the policy sued on, a portion of the building was rented to Mrs. Prewitt as a private boarding-house, the rest of the premises being occupied as described in the policy sued on. Early in February, 1872, the Georgia Home Insurance Co. withdrew its business from Jefferson, and Lewis & Anderson cancelled Stone's policy in that company; they proposed, at the same time, to renew his insurance in another company, but the proposition was declined. On the 17th of February, 1872, Ragsdale, Stone's book-keeper, called on Lewis & Anderson, who were the local agents of the appellant at Jefferson, and duly authorized to issue policies of insurance for appellant, and applied for $2,500 of insurance on the property subsequently destroyed. The transaction was made with Lewis, who said he was very busy, and could not issue a policy just then, but he took from Ragsdale an application for insurance in the Texas Banking and Insurance Co., signed in blank by Ragsdale, for Stone, and promised to make out the policy as early as possible, telling Ragsdale he might consider the property insured from that time. He afterwards made out and delivered the policy as sued on. The application was proven to have been filled in the handwriting of Lewis; it contains no description except the material of the building. It was further proven that it was usual

among insurance agents to take applications signed in blank, and for such applications to be filled by the agents in accordance with the facts, either upon an examination by the agent in person of the premises insured, or upon representations made by the applicant. No representation or description of the occupancy whatever was given by Ragsdale at the time of making the application; and Lewis testified, that, as well as he could remember, he filled the application from an application formerly made in another company represented by him. He also stated that there was no agreement between himself and Ragsdale as to how the application should be filled. There was testimony to the effect that the occupation of the premises for boarding-house purposes was notorious at the time of the issuance of the policy sued on, and some evidence to the effect that the agents had knowledge of it. Lewis made no survey of the property, that being generally done by Anderson, who was sick at the time. The occupation of the premises was not changed from the date of the policy until the date of loss, and was as described in the policy, and also in part as a boarding-house. The loss was proved, as alleged in the petition. It was proven by the appellant that the occupation as a boarding-house increased the risk.

On this state of facts the judge charged:

1. "That if the jury believe, from the evidence, that at the time of effecting the policy of insurance sued on the defendant's agent, acting in the usual course of his agency, undertook to examine and describe the risk to be covered, the plaintiff making no representation as to the facts, the defendant cannot now set up in avoidance of the policy any facts affecting the risk, and not embraced in the policy, if such facts existed at the time of the issuance of the policy; and it is immaterial whether the agent examined the property or not, if his actions were such as to induce the plaintiff to think he had done so.

2. "When a party applying for insurance undertakes to

describe the property and the facts affecting the risk, he is bound to represent all facts material to the risk; but if the insurers, through their agent, undertake to examine and state the facts, the insured is not responsible for an omission or mistake, even though it be material to the risk, and the insurers are estopped from saying the risk is not properly described.

3. "If the jury believe, from the evidence, that it was the custom of insurance agents to receive applications from persons desiring insurance, signed in blank, and afterwards to fill up the applications and policies themselves for their companies, and that the agent of the defendant did, in pursuance of such custom, so receive the application of plaintiff in this case,—plaintiff concealing nothing and making no false representations,—and the same was actually thereafter filled up by the said agent, without further communication with plaintiff, and upon it the policy issued, then plaintiff cannot be held responsible for any misrepresentations or omissions of said agent, and defendant is not relieved of responsibility on account of any such misrepresentation or omission, you will find for the plaintiff; otherwise you will find for the defendant."

Defendant requested the court to charge, substantially, "that the description of the risk, as made in the policy, was a warranty on the part of Stone, and that if there was any variance therein from the facts, it amounted to a breach of warranty by Stone, and he would not be entitled to recover"; which was refused.

Verdict and judgment for plaintiff for the amount sued for. Defendant appealed.

[No briefs for appellant came to the reporters.]

*Flournoy, Sherwood & Scott*, for appellee.—The particular description of the property, as ascertained in the policy sued on, may be construed from two points of view. It may be

intended as merely for the purpose of identifying the property which is covered by the policy, or it may be intended as a description of the risk. Under the first supposition, it is evidently immaterial whether it stated the occupation of the premises fully, or whether so much of the description as related to the occupancy was true or not. In any event, the purpose of the description would be accomplished if it pointed to property with sufficient certainty to enable any one to find it by reference to that part of the description which was true.

If, on the other hand, it be construed as a warranty, the truth and fullness of the description as to occupancy, as set out in the policy, becomes of essential importance; for it touches the risk itself, which is of the essence of the contract. The appellee contends that it is not to be construed as a warranty, and in support of this view refers, first, to the policy itself; second, to the circumstances of its issuance as indicated by the evidence; third, to the two taken in connection with each other. The policy, it will be remembered, is the act of the insurer, and its terms will be construed most strongly against him in all cases where any contest is made upon the construction of doubtful clauses. (1 Pars. on Cont., 506.)

In this instance, the warranty of the appellee is expressly stated in the policy to be contained in the application of the assured, number 1421, to which special reference is made, as the act of the assured. The application is made part of the policy, and the two together constitute the contract of insurance on the one side and warranty on the other. The application constituting the warranty contains full questions as to every feature of the risk that can be considered material as affecting the action of the insurer in accepting or rejecting it. No statement is made in answer to the question of occupation, nor, indeed, to any of the many others, except to that concerning the material of the building. We think that the policy, being the act of the insurer, and therefore to be con-

strued against him in case of doubt, shows clearly what is to be regarded as the warranty of the assured, viz., application number 1421 of assured; that this application being silent as to the mode of occupancy, the assured will not be held to have warranted any particular mode, and that the special defense to the contrary is proven to be false by the very instruments on which the action is brought.

In the next place, the circumstances of its issuance show that the parties did not intend the description in the policy to be considered as a warranty as to mode of occupancy. Here arises a preliminary question on the competency of oral testimony to affect written contracts. Within a few years last past, since insurance has been elevated from a line of business simply to a science in itself, the courts have been called on to enunciate a principle of evidence which will be applied in all analogous cases, though hitherto, so far as we have had occasion to inquire, it has only been demanded in cases growing out of contracts of insurance. The rule is stated, by the Supreme Court of the United States, to be, that oral testimony, though not admissible to vary or contradict a written instrument, will be received to show that the instrument was procured under such circumstances as estop the other side from using it in the way that is objected to. (The Union Mutual Insurance Co. v. Wilkinson, 13 Wall., 222. See, also, 22 Mich., 146, opinion of the court by Cooley, J.; 43 Mo., 148; 40 Id., 557; 42 Id., 457; 31 Conn., 517; 5 Rawle, 342; 23 Penn., 50; 50 Id., 331; 18 N. Y., 392; 36 Id., 550; 37 N. H., 35.) Many of these cases discuss the authority of agents when merely solicitors. In this case, the agents being authorized to issue policies, they were as competent to act, in all respects, as the company itself, for the purpose of executing a contract of insurance.

Counsel also cited and discussed 21 Conn., 51; 18 N. Y., 392; 40 N. H., 333; 37 Id., 48; 29 Penn., 31; 16 Wis., 241; 7 Gray, 261; Flanders on Ins., 92, 220.

MOORE, ASSOCIATE JUSTICE.—The first question presented for our consideration in this case, is whether the policy of insurance upon which this action is brought imports a warranty that the house in which the property insured was stored at the date of the policy was used and occupied in no other manner than that stated in the policy. It is not said in the policy that the contract of insurance is made by the insurer upon the condition, or an express warranty of the insured, that the house was used for no other purpose, and occupied in no other manner than stated in the policy. But, unquestionably, this is not necessary. No technical words or form of expression are necessary to constitute a warranty. Words of affirmation, or statements imputing conditions or undertakings on the part of the insured, relating to the risk, or affecting its character and extent, upon which it must be inferred the insurer contracted, will ordinarily be construed and held to be a warranty. (Bliss, sec. 34; Wood *v.* Hartford Fire Ins. Co., 13 Conn., 533; Sarsfield *v.* Metropolitan Ins. Co., 61 Barb., 479.) Certainly, the occupancy and use of the house in which the property insured is kept relates in an essential manner to the risk. Obviously, the hazard of the insurer is thereby essentially increased or diminished. And where there were other words in the policy, as there are unquestionably in this policy, to identify the building which contained the property insured, the terms "occupied as a store-house" have been held to be not only in themselves fitly chosen to express a fact relating to the risk, but that they could not be regarded as employed for any other purpose, and necessarily implied that the house was not occupied for any other purpose than that thus stated. (Wall *v.* East River Ins. Co., 3 Seld., 373.) Nor do we think the reference in the succeeding section of the policy to the assured's application, with declaration that it "is his warranty and a part hereof," will rebut the conclusion from the preceding sentence, of a warranty that the building was not otherwise used than as therein stated.

Assuming, then, that there is in the policy a warranty or condition that the house was not used as it in fact was, and this not being a suit to reform the contract, but an action upon the contract as made, the next question is,—Can it be shown by parol evidence, in avoidance of a plea of a breach of the warranty, that the true use of the house was, or should have been, known to the insurer when the policy was issued? The use of the house, as alleged in the answer of appellant, and in a manner other than warranted by appellee, so as to increase the danger of the loss of the property, is shown in the record beyond all question. It is also, we think, equally clear, if this may be done by parol evidence satisfactorily established, that no false representations, in respect to the use of the building in which the property insured was stored, were made by appellee or his clerk, by whom the policy was procured from the agents of appellant. We think the testimony beyond all doubt warrants the conclusion, if, indeed, it does not conclusively show, that the application for insurance was signed for appellee in blank at the special instance of appellant's agents, and upon the implied, if not express, understanding and condition that the agents would make a survey or examination of the property, or take other means to satisfy themselves in regard to its situation and condition, and would fill up the application and issue the policy as the existing facts should justify and demand; and if the insurance agents by whom the policy was issued had complied with their undertaking, they would have easily learned the manner in which the building in which the property was stored was in fact used; if, indeed, as seems quite probable, they did not know it when the application was signed. It can hardly be doubted, from the evidence, that the failure to state in the policy the use to which the building in which the property insured was stored, is wholly attributable to the neglect or omission of the agents of appellee, by whom the insurance was effected, to give proper attention to a matter and discharge a duty which they had voluntarily undertaken,

and which, it seems, according to the usage when this trans-
action took place, was ordinarily performed by the insurer.
This, too, when these agents must have known that the in-
sured relied upon them to perform their undertaking and
properly consummate the contract.

The admissibility and effect to be given to parol evidence
of this character, in response to a plea of a breach of war-
ranty in the policy of insurance, involve the correctness of
the general principles of law, in regard to contracts of insur-
ance, announced in the charges given the jury in this case
by the court, or in those asked by appellant. If, as appel-
lant's counsel insist, and as seems to be generally held by
the earlier cases, proof that the insurer or his agent drew the
application, and knew of the existence of the matters of
omission to state which constitutes the breach of warranty
relied upon to defeat a recovery upon the policy, will not
affect the case; and if, whether the omission was by accident
or fraudulent design, the insured cannot recover in an action
on the policy, unless the condition or warranty as therein
stipulated has been performed or kept, the instructions given
by the court to the jury are erroneous, and the converse of
them, asked by appellant, should have been given. (Wall *v.*
East River Ins. Co., 3 Seld., 370; Mead *v.* Northwestern Ins.
Co., Id., 520; Burritt *v.* Saratoga Ins. Co., 5 Hill, 188; State
Mutual Ins. Co. *v.* Arthur, 30 Penn., 315; Pierce *v.* Empire
Ins. Co., 62 Barb., (N. Y.,) 636; Kennedy *v.* St. Lawrence Ins.
Co., 10 Id., 285.)

But that parol testimony is admissible to show that in-
surers or their agents are responsible for an omission or
improper statement of matters in the application, which are
referred to and made a matter of warranty in the policy,
when such warranty is relied upon to defeat an action on
the policy; and that it may be shown that the insured is in
no way responsible for, or has contributed to the mistake, but
has relied upon the insurer or his agents to prepare the appli-
cation and policy, and did not, in fact, know of the mistake

or omission, but, on the contrary, the facts as they existed were known, or should have been known, to the insurer or his agents at the time the policy was effected, and thereby the insurer is estopped from setting up such breach of warranty to defeat an action on the policy, is now well settled, and generally, if not universally, recognized as the sounder doctrine in regard to contracts of this kind. (Rowley *v.* Empire Ins. Co., 36 N. Y., 550; Plumb *v.* Cattaraugus Ins. Co., 18 Id., 392; Frost *r.* Saratoga Ins. Co., 5 Denio, 154; North American Ins. Co. *v.* Throop, 22 Mich., 158; Franklin *v.* Atlantic Ins. Co., 42 Mo., 456; Columbia Ins. Co. *r.* Cooper, 50 Penn., 331; Ins. Co. *r.* Wilkinson, 13 Wall., 222; Ayres *v.* Home Ins. Co., 21 Iowa, 185; Coombs *v.* Hannibal Ins. Co., 43 Mo., 148; People's Ins. Co. *v.* Spencer, 53 Penn., 353; Meadowcraft *v.* Standard Ins. Co., 61 Penn., 91; Beal *v.* Park Ins. Co., 16 Wis., 241.)

This change in the general current of decisions seems to have been deemed necessary and required by the manner and circumstances now almost universally leading to and attending these contracts. As said by Miller, J., in the case of the Insurance Co. *v.* Wilkinson, 13 Wall., 234, "It will not be denied that the application, logically considered, is the work of the assured, and if left to himself or to such assistant as he might select, the person so selected would be his agent, and he alone would be responsible. On the other hand, it is well known (so well that no court could be justified in shutting its eyes to it) that insurance companies organized under the laws of one State, and having in that State their principal business office, send these agents over the land, with directions to solicit and procure applications for policies. * * * They pay these agents large commissions on the premiums thus obtained, and the policies are delivered at their hands to the assured. The agents are stimulated by letters and instructions to activity in procuring contracts, and the party who is in this manner induced to take out a policy rarely sees or knows anything about the

company or the officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect the insurance as the full and complete representative of the company in all that is said or done in making the contract. Has he not a right to so regard him? . It is quite true, that the reports of judicial decisions are filled with efforts of these companies, by their counsel, to establish the doctrine that they can do all this, and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy; the argument being, that as to all other acts of the agent, he is the agent of the assured. This proposition is not without support in some of the earlier decisions on the subject; and at a time when insurance companies waited for parties to come to them to seek assurance, or to forward applications on their own motion, the doctrine had a reasonable foundation to rest upon. But to apply such a doctrine, in its full force, to the system of selling policies through agents which we have described, would be a snare and a delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the insurance corporations receive the benefits, and the parties supposing themselves insured are the victims."

But while it may be shown by parol evidence that the insurer is estopped from claiming immunity from liability by reason of a breach in the warranty thus improperly or inaccurately incorporated in the policy, yet there must be a proper predicate for this, as well as all other testimony upon which parties rely to support their action or maintain their defense. The evidence is in the nature of a confession and avoidance of the answer of appellant; setting up a breach of warranty. Appellee, however, neither made a replication to the answer, nor, by amendment of his petition, averred the facts upon which he relies in avoidance of the defense set up by appellant. The evidence, if excepted to when offered, should have been excluded; and, though admitted without objection, according to numerous decisions of this court, as

it was not warranted by the pleadings, it cannot be looked to as the basis for relief. (Hall *v.* Jackson, 3 Tex., 305; Cherry *v.* Newby, 11 Tex., 457; Norvell *v.* Oury, 13 Tex., 31.) The case, however, was made by the charge of the court to turn entirely upon it. If we exclude from consideration the testimony in avoidance of the warranty in the policy pleaded by appellant, there is no evidence calling for the charge given by the court. Aside from this evidence, it was clearly irrelevant, and calculated to mislead the jury, and therefore erroneous.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.