## WILLIAM MARTIN v. STATE INSURANCE COMPANY.

1. A policy of fire insurance provided that no suit or action against the company for the recovery of any claim by virtue of the policy, should be sustainable in any court of law or chancery, unless such suit or action should be commenced within six months after the loss occurred. *Held*, that if the delay to bring suit is a result to which the company mainly contributed by holding out hopes of amicable adjustment, the company cannot be permitted to take advantage of the delay under the limitation clause, and that if the company, in any negotiations or transactions with the assured, after the period of limitation has expired, recognizes the continued validity of the policy, the clause of limitation is waived. *Held*, also, that where the other conditions of the policy are such that a reasonable compliance with them, insisted on by the company, is inconsistent with the observance of the limitation clause, the latter will not be allowed to defeat a recovery.

2. The naked legal title of the property insured was in a third party, but the whole beneficial interest and the possession were in the assured. *Held*, that the latter had the *entire, unconditional and sole ownership* of the property.

3. The policy described the subject of the insurance as being "a two-story and attic frame, shingle-roof building, *occupied as a boarding-house.*" The proof showed that about one-third of the lower story was

occupied by a bar-room and billiard-room—the place was not licensed as an inn and tavern or otherwise—and the remainder of the property was used as a boarding-house by the tenant of the whole property. There was no evidence that the existence of the bar-room and billiard-room was at all material to the risk. *Held*, that there was no breach of warranty.

On rule to show cause.

Argued at June Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and PARKER.

For the plaintiff, *J. B. Vredenburgh.*

For the defendant, *C. H. Winfield.*

The opinion of the court was delivered by

DIXON, J. In an action upon a policy of fire insurance the plaintiff obtained a verdict, and the defendant was thereupon granted a rule to show cause why a new trial should not be had, under which the reasons hereinafter considered are relied on for setting aside the verdict.

1. That there was no legal proof in the cause to show a waiver by the defendant of the limitation clause in the policy as to the time within which suit should be brought.

The clause referred to declared that no suit or action against the company for the recovery of any claim by virtue of the policy, should be sustainable in any court of law or chancery, unless such suit or action should be commenced within six months next after the loss occurred. The fire happened September 23d, 1870. The suit was begun April 7th, 1871. At the trial the court charged that any words, acts, transactions or conduct on the part of the company or its authorized agents, with respect to its liability on the policy, which might reasonably be supposed to have induced the plaintiff to believe that the clause of limitation would not be insisted on by the company, would be evidence on the point of waiver. The correctness of this instruction is not ques-

tioned by the defendant. The testimony offered to show waiver was of two sorts : negotiations for settlement and demands made by the company under the policy, a fair compliance with which prevented the right of action from accruing until the six months after the fire had elapsed.

If the delay to bring suit is a result to which the company mainly contributed by holding out hopes of amicable adjustment, the company cannot be permitted to take advantage of the delay under the limitation clause of the policy. *Grant* v. *Lexington Ins. Co.*, 5 *Ind.* 23 ; *Mickey* v. *Burlington Ins. Co.*, 35 *Iowa* 174 ; *Black* v. *Winneshick Ins. Co.*, 31 *Wis.* 74 ; *Little* v. *Phœnix Ins. Co.*, 123 *Mass.* 380 ; *Peoria Ins. Co.* v. *Whitehall*, 25 *Ill.* 466 ; *Andes Ins. Co.* v. *Fish*, 71 *Ill.* 620 ; *Home Ins. Co.* v. *Myer*, 93 *Ill.* 271.

And if in any negotiations or transactions with the assured, after knowledge of the forfeiture, the company recognizes the continued validity of the policy, the forfeiture is waived. *Titus* v. *Glens Falls Ins. Co.*, 81 *N. Y.* 410.

On this point, the plaintiff's attorney, who represented him in the matter from the time of the fire, swore at the trial that there were three companies having policies on the burned property ; that all of them were represented by one agent ; and that negotiations between himself and that agent for a joint settlement of all the claims began immediately after the fire and continued until about the time the suit was brought ; that it was held out on the part of the companies that if the plaintiff would settle at some reasonable figure, they would be induced to settle with him, and that because of these negotiations suit was not sooner commenced.

According to this evidence these negotiations continued not only through the whole period limited for bringing suit, but even after it had terminated, and therefore rendered it lawful for the jury to infer that the defendant then intended not to rely on this limitation, and that the plaintiff's delay was owing to the fact that such intention was manifest, and hence that the condition was waived.

It is also a rule for determining the rights of parties under

such a policy as this before us, that where its other conditions are such that a reasonable compliance with them is inconsistent with the observance of the condition requiring suit to be brought within a specified time, the latter will not be allowed to defeat a recovery. *May on Ins.*, § 487.

Thus where the interest of the insured was a mechanics' lien, and the proper mode of determining its amount was by a suit against the owner, which suit was not concluded by reasonable diligence until the limited period had expired, it was held that the condition was inoperative. *Stout* v. *Ins. Co.*, 12 *Iowa* 371; *Longhurst* v. *Star Ins. Co.*, 19 *Iowa* 364.

So, when, by some act or omission of the company, the insured was induced or compelled to delay the presentation of complete proof of loss to so late a day that the claim did not become due, according to the policy, until the time limited for suit had elapsed, a waiver of the limitation was inferred. *Killips* v. *Putnam Ins. Co.*, 28 *Wis.* 472; *Ames* v. *New York Ins. Co.*, 14 *N. Y.* 253.

By the terms of the present policy the assured, if required, was to submit to an examination, under oath, by any person appointed by the company, and if deemed necessary by the company, to a second examination, and until such examinations were permitted, the loss was not to be payable; nor was it payable until sixty days after presentation of due proofs. The proofs were presented October 20th, 1870, and soon afterwards the defendant's agent orally demanded an examination of the plaintiff. No time for examination was designated, but the plaintiff's attorney was to notify the agent when the plaintiff would be ready. On February 25th, 1871, the demand was renewed, in writing, by the agent, but he still omitted to appoint any time or place, simply stating that he himself would be ready to attend to the examination at the plaintiff's *earliest convenience.* This demand was in no way modified or withdrawn until April 7th, 1871, when the plaintiff tendered himself at the office of the company for examination, which was then refused. So far as the case shows, the plaintiff presented himself to be examined at his

earliest convenience. These circumstances justify an inference of waiver of the limitation. If the agent had designated the 7th of April as the day for the examination, it cannot be doubted that the company would have been estopped from setting up this limitation. The company had a right to the examination before suit; it also had the right to appoint a day therefor, at least with the acquiescence of the plaintiff; and if it did so appoint a time beyond the expiration of the six months limited by the policy for the commencement of an action, its good faith could be vindicated only by holding that the limitation was waived, and certainly the company could not be allowed to allege its own bad faith and take advantage of it. But the posture of affairs is not materially changed in this respect if the company, instead of fixing a day, notifies the insured to consult his own convenience as to time, and he, relying on this notice, does so, and appears accordingly. By sending such a notice the company extended the time for examination until it became convenient for the insured to attend, and, of course, extended also, as far as its license could, all matters to which that examination was a condition precedent. If the operation of the license was affecting the company injuriously, it might have been revoked; but the company cannot be allowed, after having induced the plaintiff to avail himself of the indulgence, to use it as a snare against him. Whether the plaintiff reasonably complied with the demand made was a question of fact for the jury. One's earliest convenience is so vague a condition of things that considerable latitude must necessarily be permitted for its application. The notice seems not to have reached the plaintiff personally until several days after its date; and in view of the entire want of objection by the company that the plaintiff's delay was unreasonable, we cannot say that the jury did wrong in finding that he fairly complied with the request. If he did, then a reasonable compliance with this provision inserted in the policy for the company's benefit and insisted upon by it, prevented compliance with the condition as to the

time of bringing suit, and therefore a waiver of that condition became inferable.

2. The second reason for a new trial is that the plaintiff was not the *owner* of the property, as stated in the policy. This reason is urged under the first plea, which sets up a provision of the policy requiring that if the interest of the assured be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured, it must be so represented to the company and so expressed in the written part of the policy, otherwise the policy would be void. The only statement in the policy as to title was that the plaintiff was insured against loss by fire on his building.

The character of the plaintiff's title was considered in *Franklin Fire Ins. Co.* v. *Martin*, 11 *Vroom* 568, under a policy issued on this same property, which described it as "his," and which required *any interest not absolute* to be expressed in the policy. The Court of Errors held that the plaintiff's interest was absolute, and was aptly described by the possessive "his." I can see no substantial reason for regarding the plaintiff's rights as an absolute interest in the property, and not considering them as the entire, unconditional and sole ownership of it. The mere fact that Wilson held the naked legal title did not destroy the plaintiff's ownership, (*Bonham* v. *Iowa Ins. Co.*, 25 *Iowa* 328); and as his ownership was of the fee simple in equity, and was not held jointly or in common with another, it was entire and sole, (*Dolliver* v. *St. Joseph Ins. Co.*, 128 *Mass.* 315); and to be absolute is to be unconditional. Therefore, this clause in the policy was not violated.

3. The third reason insisted on was that the policy was void because of a misdescription of the premises insured.

The contract stated the insurance to be upon the plaintiff's "two-story and attic frame, shingle-roof building, occupied as a boarding-house, situate, &c., known as the 'Mansion House,'" and declared that if an application, survey, plan or description of the property insured was referred to in the policy, such application, survey, plan or description should be

considered a part of the contract and a warranty by the assured; and [in case of] any false representation by the assured of the condition, situation or occupancy of the property, or any omission to make known every fact material to the risk, or any misrepresentation whatever, either in a written application or otherwise, or if the premises should be occupied or used so as to increase the risk, then the policy should be void.

The evidence showed that the premises were let to a tenant whose principal business was keeping boarders there, who had in it also a billiard-room and a bar where liquors were unlawfully retailed without license. The house was styled by the witnesses as a boarding-house, a summer boarding-house, a hotel, a tavern and a roadside inn; and in his proofs of loss, the plaintiff stated that it was occupied as a "boarding-house and country tavern," and as a "hotel."

The policy referred to no application, plan, survey or description outside of itself. There was no testimony offered to show that the sale of liquors or the keeping of a billiard-table increased the risk beyond that of a mere boarding-house; and when the plaintiff offered to prove that he had fully made known to the company the uses to which the property was put, the defendant objected and the trial-judge prevented him. It is conceded that the condition and situation of the building are accurately described. And, therefore, the only remaining inquiry under these clauses of the policy is, whether the contract was avoided by any false representation as to the occupancy of the premises, or by any misrepresentation whatever.

Since it is not claimed that there was any representation to come under the ban of these provisions, except the one upon the face of the policy that the building was occupied as a boarding-house, I do not perceive how, in this case, they strengthen the position of the company, for that representation concerning the use of the property became by its insertion in the policy a warranty that the property was so used, and if false, annulled the contract, even without the recited clauses. *Dewees* v. *Manhattan Ins. Co.*, 6 *Vroom* 366; *American Life*

*Ins. Co.* v. *Day,* 10 *Vroom* 89; *Franklin Ins. Co.* v. *Martin,* 11 *Vroom* 568; *May on Ins.,* § 156.

The question, then, is, was this representation as to occupancy false? It seems to me that it was not, or at least that it was not so clearly false as to make the verdict of the jury in favor of its truth a legal wrong to the defendant. The terms " hotel," " tavern," " inn," which the defendant says should have been used, are properly applied to places kept for the entertainment of travelers and casual guests, and (in view of our license laws) where liquors may be legally retailed and drunk. Neither of these characteristics pertained to the house in question as a distinguishing feature. This house was kept mainly for the residence of permanent boarders, and so far as the evidence disclosed, it afforded no entertainment to travelers or transient customers except such as was unlawfully dispensed over the bar. The bar and the billiard-room were not inconsistent with its being a boarding-house, and while their existence may have rendered the description that it was occupied as a boarding-house incomplete, it did not necessarily make the description false. 'A partial statement, in itself true, may indeed be a false description, but that can be only when the main characteristics are thrown into the background and concealed behind some unimportant feature. In the present case, the description brought prominently forward the chief use for which the house was occupied, and even if that description did not suggest the uses to which two of the rooms were put, it should not therefore be considered false but only as imperfect. But to render an imperfect description fatal, clear language to that effect must be found in the contract. For almost any description brief enough to be inserted in a policy would be more or less imperfect, and it could not be reasonably supposed that the parties contracted on the opposite notion. Certainly, the court should not adjudge a forfeiture on any such theory. Suppose a building were stated to be used as a banking-house, when besides the janitor and his family resided in the basement, or to be occupied as a dwelling, when in fact the tenant had one room for his dental office,

or his shoemaker's shop, could the policy be repudiated? Such a result would seem to be not fairly within the contemplation of the parties. Perhaps if the mode of use of a building were made the subject of special inquiries, to be answered in an application which was to become part of the contract as a warranty, it might with more reason be concluded that every species of use was to be disclosed; or if the policy expressly interdicted occupation for certain purposes, a general statement as to occupancy which did not mention them, might properly be regarded as excluding their presence; but when the statement appears only in a description of the building, which, to a general reader, would seemed designed merely to identify the subject of the insurance, it should be sufficient if the statement be literally true and not so imperfect as to be likely to convey a false impression to a common understanding.

In *Wall* v. *East River Ins. Co.*, 7 *N. Y.* 370, the policy insured the stock of rope manufacturers in a building *occupied as a storehouse*, and expressly forbade the use of the building for carrying on certain trades denominated *hazardous*, among which was the business of rope-makers. The third story of the building was used for hackling the hemp, and the second for spinning it into rope yarns, and only the first story and basement for storing hemp. Here was not only an interdicted use but a description that applied to not more than half the building. The policy was held void. Of the same class is *Sarsfield* v. *Metropolitan Ins. Co.*, 61 *Barb.* 479, where the insurance was on a "two-story frame dwelling-house." The top story was a billiard-room, part of the lower story was a billiard-room, part was an eating-saloon, and the residue a dwelling. Billiard-saloons and eating-houses were prohibited by the policy as extra-hazardous. The court held that the company was discharged.

So, in *Dewees* v. *Manhattan Ins. Co.*, 6 *Vroom* 366, the premises described as being occupied for a country store, were, in part, occupied as a private stable, which was an expressly forbidden use, as an extra-hazardous risk—*Held*, that during such use the policy was suspended.

In *Lappin* v. *Charter Oak Ins. Co.*, 58 *Barb*. 325, the property was described as a dwelling-house, and, according to the policy, any misrepresentation or omission to state any fact material to the risk would avoid the contract.  The referee found as facts that the assured had represented that the building was not used as a tavern or saloon, that in truth the basement was used as a saloon, and that such use increased the risk.  Still, the court preferred to hold the company released on some other grounds.

In *Chase* v. *Hamilton Ins. Co.*, 20 *N. Y.* 52, the *application* of the assured described the building as a stone dwelling-house, and, by reference to the by-laws, provided that unless it contained a true representation of the property, so far as concerned the risk and value, the policy should be void.  A wooden kitchen, attached to the stone structure, formed part of the dwelling.  *Held*, that the policy was void.

On the other hand, in *Dobson* v. *Sotheby*, 1 *M. & M.* 90, the policy was effected upon "a barn."  The premises were agricultural buildings, but not such as were strictly to be described as a barn.  Lord Tenterden held the policy good, because it would give the company substantial information of the nature of the buildings, and the rate would have been the same if a more correct phrase had been used.  He said the buildings were substantially well described.

So, in *Foot* v. *Ætna Ins. Co.*, 61 *N. Y.* 571, it was said that warranties must be *substantially* true, and in *Gerhauser* v. *N. B. & M. Ins. Co.*, 7 *Nev.* 174, and *Copp* v. *German Ins. Co.*, 51 *Wis.* 637, it was held that the breach of warranty must be a *substantial* one to avoid the policy.

In *Hall* v. *People's Ins. Co.*, 6 *Gray* 185, the policy described the building as a hotel,  It was leased as a hotel and kept by the tenant as such, but he used it also as a house of ill-fame.  *Held*, that this alone did not invalidate the contract, but that if the undisclosed use were a material fact, known to the insured and suppressed by him, then the policy would not bind.  This decision can be supported only on the theory that the warranty on the face of the policy was not

Martin v. State Ins. Co.

broken, if it contained the substantial, although not the complete, truth.

In *White* v. *Mutual Fire Ass. Co.*, 8 *Gray* 566, the policy described the property as "a brick dwelling-house and wood-house." The "wood-house" was built for and used as a wood-house and carriage-house, the wood-room constituting about two-thirds of the whole structure. *Held*, that the policy covered both, and was valid.

In *Haley* v. *Dorchester Ins. Co.*, 12 *Gray* 545, an applicant for insurance on his stock in trade contained in a certain building, replying to a question as to who occupied the building, named the occupants of all except one or two rooms, and his answers were made warranties. *Held*, that unless the occupation of the omitted rooms would increase the hazard, the policy would not be annulled.

Now in the case before us the building was sixty-five feet front by seventy-five feet deep for two stories, and the attic was fifty feet square, and only a space of twenty-five feet by sixty-five feet on the first story was occupied by the bar and billiard-rooms; the rest of the house was appropriated to boarders, who, of course, had access also to these two rooms. No testimony was offered to show that a bar and a billiard-table increased the risk of fire, the policy does not indicate that they are objectionable, no inquiries appear to have been made as to occupancy, and the plaintiff tendered proof that in truth the company was apprised of all the circumstances.

In view of these facts and the adjudged cases, it does not seem just to hold that the jury were bound to find that the warranty was broken.

We are therefore of opinion that the rule to show cause should be discharged,