A. E. ALSPAUGH v. BRITISH-AMERICAN INSURANCE COMPANY OF TORONTO, CANADA.

*Fire Insurance—Conditions in Policy—Violation of Conditions —Waiver of Breach of Conditions.*

1. Where a policy of insurance on a factory contained a condition that it should not be operated later than 10 o'clock at night and that a violation of such condition should create a forfeiture of the policy, and the premium required for a mill running day and night was much greater than for one running in day time only; *Held,* that such condition was a substantial provision of the contract and not a mere technicality and its violation vitiated the policy.

2. An agent of an Insurance Company, at the request of a mortgagee, issued a policy on the mortgaged property for the benefit of the mortgagor but without a formal written application, and kept both policy and the premium paid in his hands for some time, and, after the property was burned, procured a written application from the mortgagor and sent it, with the premium, to the home office and then delivered the policy to the mortgagee.   The Company's adjuster, while inspecting the premises, learned of the violation of a condition of the policy and afterwards delivered to the mortgagee's attorney, at his request and as a personal favor, general blanks upon which proofs of loss were made out but there was no evidence that the adjuster was such an agent that notice to him would affect the Company.   *Held,* that such facts did not constitute a waiver by the Company of its right to claim a forfeiture of the policy by reason of a breach of the condition.

CIVIL ACTION tried before *Starbuck, J.,* and a jury at July Term, 1897, of ALEXANDER Superior Court.   At the close of the plaintiff's evidence the defendant moved for judgment, under Ch. 109, Acts of 1897, which was granted and plaintiff appealed.

*Mr. L. C. Caldwell*, for plaintiff (appellant).
*Mr. E. C. Smith*, for defendant.

FURCHES, J.:   The plaintiff offered in evidence a policy
of insurance for $1,500 issued by the defendant company to
J. F. Moore, mortgagor, for the benefit of the plaintiff,
Alspaugh, the mortgagee of the property destroyed; also an
application for the insurance signed by J. F. Moore, the
mortgagor.   But it was shown that this application was
prepared by Cowles, the agent of the defendant, forwarded
to Moore, signed and returned to the agent after the policy
had been issued and after the property named in the policy
had been destroyed by fire.

The plaintiff, Alspaugh, resides in the State of Oregon,
and the policy was in fact issued upon his application to
the defendant's agent.   This application was made by letter,
enclosing a check for $45 and requesting the agent of the
defendant to issue a policy for $1,500 on the property,
which had before been insured at the same rate of premium,
for the same amount, and upon the same conditions as those
contained in this policy.   The policy contained a provision
that the mill should not be run later than ten o'clock at
night, and that a violation of this stipulation should create
a forfeiture of the policy.   It was in evidence and not
denied that the mill had been running on full time, day
and night, for two weeks or more; and run all night on the
night before the fire; that the rule, when the mill ran all
night, was to stop at six in the morning for fifteen minutes
when the night force went off and the day force was put on
duty; that this change had taken place, and the fire was
discovered a few moments after this change, from the night
to the day force, had taken place; that the premium on a
policy, to run day and night, would have been five and one
half per cent, while the premium paid on the policy sued
on was three per cent.

The plaintiff also showed by the evidence of Cowles, the agent of defendant, that upon the receipt of the plaintiff's letter enclosing check for $45 and requesting him to issue a policy for $1,500 he at once wrote up the policy; that he left home that day for a trip to Atlanta, Georgia, and did not return home for about two weeks, and not until after the fire and destruction of the property; that, after his return, he forwarded the premium to the home office, notified them of the loss and retained the policy in his office until it was called for by the attorney of the plaintiff, when he delivered the policy to said attorney.

The plaintiff further showed that not long after the fire, one Catlin, an adjuster of defendant, went to the place of the fire, examined the same, and took some measurements; and that Moore, the mortgagor, at that time told him that the mill had been running at night; that after this, said Catlin, at the request of the plaintiff's attorney and as a personal favor to him, furnished him blanks upon which he made out the proofs of loss; that Cowles, witness for plaintiff, testified that he held the policy from the time he made it out until he delivered it to Caldwell as the agent of defendant. The plaintiff here rested his case.

The defendant offered no evidence, and contended that the plaintiff had not made out a case entitling him to recover, and the Court being of opinion with the defendant, the plaintiff submitted to a judgment of non-suit and appealed.

There were several questions discussed on the argument. The irregularity of issuing without a formal application; whether the policy should not have been issued to the plaintiff, and not to Moore for his benefit; and as to what effect the application made by Moore, after the fire, had upon the matter. It was also contended by the plaintiff that the plaintiff had never seen the policy, nor had he been inform-

ed as to its conditions, and was not bound by them. It was also contended that the violation of the stipulations was by Moore, the mortgagor, and that plaintiff was not affected by what he did. But, conceding there had been a breach of conditions sufficient to vitiate the policy, it was contended by plaintiff that this objection had been waived by defendant. The plaintiff claimed that the fact that defendant's agent procured Moore to make a formal application for the policy after the fire, the fact that the agent held the policy at the time of the fire, and had it in his possession at the time he forwarded the premium and notified the company of the destruction of the property by the fire; the acceptance by the company of the premium; the fact that Catlin furnished blanks to make out proofs of loss after Moore had informed him that the mill ran at night, amounted to a waiver and that defendant is liable.

Waiving all irregularities mentioned as to the issuance of the policy, we must still hold that running the mill day and night was a violation of the terms of the contract that vitiates the policy, and the defendant is not liable unless it has waived this defence.

This condition is not an irregularity. It is not a mere technicality. It is substantial—the risk being greater to run night and day, and the premium required is nearly twice as much.

It remains to see if the defendant has waived this defence, and it seems to us that it has not.

The fact that the agent, Cowles, got Moore, the mortgagor, to make a formal application for the policy, has nothing to do with it. The policy had been issued and the premium paid, weeks before this application was made, and no policy was ever issued on that application. *Nelson* v. *Ins. Co.*, 120 N. C., 302. It is a mistake of fact that the premium was paid to and accepted by the company after it had informa-

tion that the mill was being run at night. It may be, though it does not distinctly appear, that the agent, Cowles, forwarded the premium to the home company after Moore told Catlin that the mill was run at night. But the money was paid by the plaintiff and received by the company when the agent, Cowles, received it and issued the policy. Besides, there is no evidence showing that Catlin, who it seems was sent there as an adjuster, was such an agent that knowledge to him would affect the company. And without seeing how the defendant was affected by what Moore said to Catlin, it must be supposed that the defendant believed that plaintiff had not violated the terms of the contract, when it got the money from Cowles. But whether it did or not, it had already received the money when it was paid to Cowles. This $45 paid to Cowles on the 14th of November was not his money, and the fact that he forwarded it to the home office can make no difference, so far as defendant's liability is concerned.

It is probable that it would have been different if the premium had not been paid to Cowles until after the fire, and had been received by him with full knowledge of the fact that the mill was running both day and night. 2 Beach Law of Ins. Section 757 and 758.

The fact that the plaintiff had not seen the policy can make no difference. He knew that $45 would only pay for a day policy on $1,500 insurance. Besides, Cowles testified that he held the policy as the agent of the plaintiff from the time he filled it out until he delivered it to plaintiff's attorney. This is the most favorable construction of the transaction for the plaintiff, for, if it be said the policy was not issued until it was delivered to plaintiff's attorney, it then follows as a fact that plaintiff had no policy at the time of the fire. But plaintiff cannot claim the benefits of the policy and repudiate that that is against him, in

the absence of any allegations of fraud or deception. A palpable violation of the terms of the policy being shown, by which the same is vitiated, and plaintiff having failed to show that defendant has waived its right to this defence, the judgment must be affirmed.

Affirmed.