## SHOWALTER v. MODERN WOODMEN OF AMERICA.

1. LIFE INSURANCE—BENEFICIAL ASSOCIATIONS—BY-LAWS—PRO-
HIBITED OCCUPATIONS—WAIVER—INSTRUCTIONS.

In an action for the payment of a benefit certificate, defended
on the ground that deceased came to his death while engaged
in an occupation prohibited under a by-law of the society,
an instruction that if the jury should find that the officers of
the local society received his premiums with knowledge that
he was engaged in such prohibited occupation, it was a
waiver on the part of the society to insist on the provisions
of said by-law, and that the failure of the officers of the soci-
ety to return the amount of such premiums to the represen-
tatives of assured upon learning of the fact of such employ-
ment after the death of the assured, amounted to a ratifica-
tion of the waiver by the local society, was erroneous; since (a)
there had been no demand for the return of such premiums,
nor failure on the part of the society to do any act to avoid a
waiver of the provisions; (b) the contract of insurance being
made with the society, it was not bound by the action of the
local society; and (c) the certificate of insurance being in
force except as to death caused by being engaged in the pro-
hibited occupation, the society would be justified in assum-
ing that the payments were made for the benefits which
were still open to him.

2. SAME.

Where, in such action, it appeared that the society, upon
learning of the death of assured, claimed as a defense to the
payment of the amount of the certificate that the assured
came to his death by accident directly due to employment in
a prohibited occupation, and later, on request of the attor-
neys for the beneficiary, furnished blank proofs of death, ex-
pressly stating that by so doing it did not waive its right to
make the said defense, there was no waiver of such defense
on the ground that it permitted the beneficiary to incur ex-
pense in preparing the proofs of death. *Burnham* v. *Casualty
Co.*, 117 Mich. 142, distinguished.

Error to Lenawee; Chester, J. Submitted February
23, 1909. (Docket No. 46.) Decided April 24, 1909.

Assumpsit by Agnes Showalter against the Modern Woodmen of America on a policy of insurance. There was judgment for plaintiff, and defendant brings error. Reversed.

*Truman Plantz* and *Smith, Baldwin & Alexander,* for appellant.

*Bird & Sampson,* for appellee.

MONTGOMERY, J.    This action is based upon a certificate of membership issued to the husband of plaintiff, Albert W. Showalter, a member of Wyandotte Camp of the Modern Woodmen of America. The certificate of membership and the laws of the order provided for the payment to the beneficiary named in the certificate of $1,000 in case of death, but also provided in its by-laws—which were made a part of the contract—by section 14, that any person engaged in certain occupations should not become beneficial members of the society. Among other employments designated was that of railroad brakeman on trains, except passenger trains using air brakes only. The effect upon an existing certificate of a holder becoming engaged in the prohibited employments was provided for in section 15, which reads:

"Engaging in, or entering on, or continuing in, any of the occupations or employments enumerated in section 14 of these by-laws, by any beneficial member of this society, heretofore or hereafter admitted to such membership, shall totally exempt said society from any and all liability to such member, his beneficiary or beneficiaries, on account of or claimed as growing out of the death of such member by accident directly traceable to employment in such hazardous occupation or to disease directly traceable thereto."

Mr. Showalter, after taking out his certificate of membership, engaged in the service of the Detroit Southern Railway as a freight brakeman. His death occurred through his foot being caught in a frog and his being run over by the cars. It is obvious, therefore, that no liabil-

ity attached to the defendant by virtue of the terms of the contract, unless it can be successfully contended that there was a waiver of the provisions of the policy, and this is claimed. Two grounds of waiver are urged: *First*, that there was a waiver by accepting the payment of the dues by the local camp with knowledge that the decedent was engaged in the prohibited employment, coupled with the fact that the dues were remitted to the general body and retained and not returned to the assured or his representatives; *second*, it is claimed that the waiver of this defense to the policy occurred through the action of the company in requiring or permitting the plaintiff to incur expense in preparing proofs of loss.

The alleged waiver by the receipt of the dues is based upon the testimony of the clerk of the local camp at Wyandotte, and of the plaintiff, the latter of whom testified that Mr. Morganthau, the clerk of the local camp, asked her at one time when she went to pay the dues how Mr. Showalter liked his job, and if he had plenty of work. She replied that he had, and that he, Mr. Showalter, expected to quit the service of the railroad soon; that he was going to quit the Detroit Southern as brakeman as soon as he could find something else to do. It appears that, after the death of Mr. Showalter, information of the fact that he had been engaged in braking, and that his death was directly traceable to his employment as freight brakeman, came to the home office, and the circuit judge submitted it to the jury upon this branch of the case upon the theory that the receipt of the premiums by the clerk of the local camp with knowledge on his part that the insured was engaged in the business of braking was a waiver of the right on the part of the company to insist on the provisions of by-law 15, and that the failure of the officers of the home office to return the amount of the assessment to the representatives of the assured upon learning of the fact of such employment after the death of the assured amounted to a ratification of the waiver by the local camp. We think there are two answers to this

contention: *First.* No demand was ever made for the return of the assessment, and within the case of *A. M. Todd Co.* v. *Insurance Co.*, 137 Mich. 188, we think it cannot be said that there was a waiver by the home office of the provisions of section 15. Nor do we think it possible to distinguish the case from the *Todd Case* upon the ground that what is claimed here is a ratification of a previous waiver. It is said that the local camp had already waived the provision. But the contract was with the great camp, and the waiver must be by the great camp, and a waiver which would bind the great camp must arise from a failure to do some act which it was its duty to do to avoid the waiver. No act of the assured was induced by any nonaction on the part of the great camp.

But, more than this, it will be noticed that under the provisions of section 15 the assured was not excluded from the benefits of the society. There is a social feature connected with the organization. There is also, as before stated, a provision for a payment of a benefit to the assured's representatives in case of death. Section 15 does not wholly exclude the right to recover in any case under the policy. Had all the notice which the clerk of the Wyandotte camp had been brought home to the great camp, they would still have the right to assume that the payments of dues were for the benefits which were still open to the assured notwithstanding his engaging in an employment named in section 14. That provision only rendered the certificate void as to any claim on account of the death of a member by accident directly traceable to employment in such occupation or to disease directly traceable thereto. For death occurring from any other cause liability on the part of the company still continued, and it was not bound to assume that the payment made by the assured was with any other purpose than to maintain his policy in force for the benefits which could accrue and would accrue in case of death, notwithstanding the fact that he had engaged in an employment prohibited by

by-laws 14 and 15. There was no waiver by reason of the acceptance of dues and assessments by this society. Upon this question the case of *Modern Woodmen of America* v. *Talbot*, 76 Neb. 621, is directly in point.

Upon the question of waiver by accepting proofs of death with knowledge of the facts as to the manner of the assured's death, the facts are that the first information of the manner of the death of the assured came to the great camp through a notice from the clerk of the local camp. The clerk of the great camp replied to this letter, addressing the local clerk, stating that upon learning of the occupation of the assured he should have refused to accept further dues and assessments on his account, and adding:

"You should not assist the beneficiary in executing death proofs unless called upon to furnish evidence in your official capacity as camp clerk only. It is to be regretted indeed that the Neighbor should have met his death directly from his occupation, but under the circumstances I do not see how the society is liable under the certificate held by the Neighbor. I do not think it would be best for you to put the beneficiary to any unnecessary expense in making a trip to Rock Island to present the case to the board, as the case will undoubtedly be referred to some member of the board for special investigation."

Nothing further appears to have been done until the 30th of July, when Messrs. Bird & Sampson, attorneys for the plaintiff, wrote to the head clerk of the great camp, stating that the claim had been left in their hands for collection, and adding:

"You will please inform us if there is any objection to the payment of this claim, and, if so, what. Please let us know whether the proof of death has been properly made."

The answer to this on August 1st was:

"Will say as yet death proofs have not been filed at this office for consideration by the board of directors. Therefore the claim has never been passed upon as to whether it is a legal claim against this society. From evidence on file it appears that he was in one of the prohib-

ited occupations, and came to his death by reason of such occupation. This being the fact, I presume the beneficiary realized that she has no legal claim against this society. Trusting this will supply you with the desired information," etc.

Replying to this, on August 6th, Messrs. Bird & Sampson wrote again to the head clerk, asking that blanks for proof of death be sent forward. In reply to this the great clerk replied:

"The society does not consider itself liable under certificate No. 832548, issued to Albert W. Showalter through Camp No. 9980, of Wyandotte, Michigan. However, if you wish to present facts for the consideration of the society's board of directors, you may do so, and for that purpose I enclose a complete set of death proof blanks. By furnishing these blanks the society does not waive its right to deny any and all liability to the beneficiary under the certificate issued to Mr. Showalter."

It is claimed that expense was incurred in preparing the proofs of death and forwarding them, and it is urged that within the case of *Burnham* v. *Casualty Co.*, 117 Mich. 154, there was a waiver of the right to insist upon the defense that the deceased was engaged in a prohibited employment. It is obvious that the same contention could be made as to any defense whatever. Indeed, as to any other defense than that attempted in this case, it might be possible to say upon the authority of the case cited that there was a waiver. But the reading of this correspondence makes two things clear: *First.* That the company did not admit liability. They took every means to disclaim that there was liability. *Second.* That in the very first communication to Messrs. Bird & Sampson they stated precisely the same defense that is attempted to be made in this case, namely, that from evidence on file it appears that decedent came to his death by reason of being engaged in a prohibited occupation. Again, when transmitting the blanks of proof of death, it was

distinctly stated that the society did not consider itself
liable. It is difficult to conceive how any other courte-
ous answer could have been made than that which the
clerk of the great camp gave. The case is clearly dis-
tinguishable from *Burnham* v. *Casualty Co.* In that
case a distinct ground of defense was foreshadowed in
the communication. The language of the communica-
tion was:

"Although we do not understand how you are going to
affirmatively prove accidental death in this case, under
the circumstances, yet we will comply with your request,
and forward the blanks as requested, subject to the notices
and stipulations printed thereon."

It was contended in that case that as to the question of
whether there was accidental death there had been no
waiver, but the effort was to set up another entirely dis-
tinct defense. In the present case there has been no waiv-
ering as to the nature of the defense to this claim. The
very first communication of the company to its subordinate,
the clerk of the local camp, as well as the first communi-
cation to Messrs. Bird & Sampson, stated with definite-
ness what the nature of the defense was, and the last com-
munication again denied liability, but gave the privilege
of presenting proofs of death to the society's board of
directors if they saw fit to do so. No one could read this
letter and understand that these proofs of death were fur-
nished on any other assumption than at the option of the
representatives of Mrs. Showalter, and that, in doing so,
they would take their chances on convincing the directors
of some legal or equitable claim against the company.
But that the company was insisting that the assured had
been engaged in a prohibited occupation, and that for this
reason there was no liability, is perfectly manifest from
this correspondence. There is no room for saying, there-
fore, that the plaintiff was misled and induced by this
correspondence to incur expense or that there is any ele-
ment of estoppel present.

Reaching the conclusions we have upon the two alleged waivers, it becomes unnecessary to discuss the other questions presented.

The judgment is reversed, and a new trial ordered.

BLAIR, C. J., and GRANT, OSTRANDER, and HOOKER, JJ., concurred.