[No. 8458.]

## FRAIN V. MODERN WOODMEN OF AMERICA.

LIFE INSURANCE—*Conditions of Policy—Waiver.* A benefit certificate issued by a fraternal order provided that entrance by the assured upon any calling designated therein as hazardous should ''extinguish the liability of the society,'' unless he should procure a certain certificate and pay an increased rate. The assured having entered upon one of the occupations denounced as hazardous by the policy, came to his death directly traceable to the hazards of the new calling. The son of plaintiff, very shortly after the change of occupation, notified the local camp clerk of the change, paid the customary assessment, and offered to pay any additional amount required. The clerk received the assessment due on the ordinary certificate, but declined to accept any additional amount. No application was made by or on behalf of the assured for the ''Hazardous Occupation Certificate'' required by the policy, and no increased rate was ever paid on that account. *Held* the society was not liable. (588, 589.)

The evidence examined and *held* that the death of the assured was ''directly traceable'' to the hazards of the new employment, within the meaning of the policy, in such case. (590.)

*Error to Denver District Court.* Hon. CHARLES C. BUTLER, Judge.

Mr. JOHN H. REDDIN, for plaintiff in error.

Mr. TRUMAN PLANTZ, Mr. GEORGE G. PERRIN, Mr. J. J.
MCFEELY, for defendant in error.

GARRIGUES, J., delivered the opinion of the court.

Action to recover on a life insurance policy. There are
no disputed facts.

June 8, 1909, Edward F. Ford became a beneficial
member of Centennial Camp No. 9743, at Denver, Colorado,
of the defendant society, and there issued to him on that
date a benefit certificate for the sum of $2,000.00 payable
to his mother. November 24, 1910, she died and March 1,
1911, the insured surrendered the original certificate or
policy, and received another in lieu thereof in which Cathar-
ine Frain, plaintiff herein, was named as beneficiary. This
last certificate, being the one involved in this action, pro-
vides among other things: "That all the conditions con-
tained in this certificate and the by-laws of this society, as
the same now exist, or may be hereafter modified, amended
or enacted, shall be fully complied with"; "If the above
named member shall, at any time after the issuance of this
certificate, enter upon any of the prohibited or hazardous oc-
cupations mentioned in the by-laws of this society as the
same now exist or may be hereafter modified, amended or
enacted, the entrance into said employment shall limit or
extinguish the liability of the society upon this certificate
in accordance with the by-laws thereof."

Section 15 of the by-laws provides: "A person en-
gaged or employed in any of the following occupations shall
not become a beneficial member of this society, viz: * * *
railroad brakeman on all trains except passenger trains
using air brakes only."

Section 18 provides: "Any beneficial member in good
standing who may hereafter desire to enter upon any of the
occupations designated in this section, and continue his cer-
tificate in full force and effect, including the hazards of said

occupation, or, having entered upon any of the said occupations, may desire to extend his certificate to cover the hazards of said occupation, shall make application to the Camp Clerk therefor, on blanks prescribed by the Executive Council, and pay the increased rate herein designated. If said application is not made until said member shall have entered upon said hazardous occupation, he shall furnish satisfactory proof to the Supreme Medical Directors of this Society that his health has not been impaired by reason of this employment in said hazardous occupation. The liability of this society to the member for protection against the hazards of his occupation shall not begin until such member shall have complied with all the conditions hereinbefore stated, nor until a certificate shall have been issued by the head clerk under the seal of the Society and delivered to the member while in good health. The liability of the member for the hazardous rate shall begin with the assessment current at the date of the issuance of the hazardous certificate by the Head Clerk."

It is further provided by the by-laws that engaging in or entering on or continuing in the employment of railroad brakeman, on trains except passenger trains equipped with air brakes, by any beneficial member of the society, shall totally exempt it from any liability to such member or his beneficiaries on account of his death directly traceable to the employment in such hazardous or prohibited occupation; this provision, however, does not apply to a beneficial member who shall have complied with the provisions of section 18.

When Ford took out his policy of insurance, his occupation was that of a grocery clerk, and in his application he agreed if he became a brakeman on a train other than a passenger train using air brakes, he would recognize the full force and effect of the society's by-laws extinguishing its liability upon the certificate of any member engaged in such occupation. His work continued to be that of a clerk until immediately prior to January 31, 1912, on which date he en-

gaged in the occupation of a railroad brakeman on a work train, and so continued until the happening of the accident on February 2, 1912, which resulted in his death.

January 31, 1912, the local Camp Clerk at Denver was notified that Ford was engaged in his new occupation, by the son of plaintiff, who, on that date paid the usual assessment due on the certificate, and offered to pay any additional amount required by reason of the hazardous occupation of the insured, but the clerk of the camp not being advised as to what the increased assessment should be, declined to take any additional amount, but received the assessment due on the ordinary certificate, as usual, and issued a receipt therefor. No application was ever made by the insured under the by-laws of the order, for a "Hazardous Occupation Certificate," and no increased rate was ever paid on that account.

On February 2, 1912, Ford was killed accidentally while engaged as a brakeman on a work train in California. On proof of death being furnished the company refused payment and denied its liability under the certificate. This action was instituted, and the cause tried to the court without a jury. The finding was in favor of the defendant and plaintiff brings the case here on error.

Only two questions are presented and argued by plaintiff in error: 1. That the cause of death is not shown to be directly traceable to the prohibited occupation, the proof showing that death was caused by loss of blood, shock from an operation and injuries received from falling off a train. 2. If it be true that the death of the insured is directly traceable to the hazardous employment, the defendant must be held to have waived the provisions of its by-laws, now relied on, and is estopped from claiming a forfeiture or exemption from payment.

1. The first question must be resolved against the plaintiff. Not only is it alleged in the complaint and admitted in the answer "That on February 2, 1912, said Edward F. Ford was killed in an accident while engaged as a brake-

man on said work train," but the testimony is: that Ford was working on a gravel train as brakeman, in California; that the accident occurred near Corcoran, Kings County, California; Ford was on top of the moving train going towards the caboose and fell between the cars while the train was moving; the train ran over him before it could be stopped; he was taken to Corcoran and then to the sanitarium at Hanford, where he was given medical attention and an operation performed; the accident occurred on the afternoon of February 2, 1912, and he died that same evening at the Sanitarium at Hanford; the cause of death was loss of blood, shock from the operation and injuries received from falling off a train; he met with the accident while performing his duties as brakeman. Unquestionably under the pleadings and evidence, the death of the insured is "directly traceable" to the prohibited or hazardous occupation.

2. It is the contention of plaintiff in error that the defendant, by its local Camp Clerk, having received the ordinary assessment and retained it with knowledge of the fact that Ford was engaged as a railroad brakeman, is now estopped from declaring a forfeiture, it having waived its right to a defense based upon the ground that the insured was engaged in a hazardous occupation not covered by the terms of his certificate. We have no quarrel with the law cited in support of this proposition. Unquestionably an insurance company may be estopped from setting up a forfeiture, by the collection and retention of premiums or assessments with full knowledge, directly or impliedly, of the facts and conditions under which it seeks to defend, whereby the insured is led to rely upon an assumption that it had waived its right of forfeiture under the contract; but we have nothing of that kind here. The record is barren of any evidence bringing the case within such a rule. The insured paid the usual and ordinary assessment, through his agent, who notified the clerk of the local camp of the change in employment, and offered to pay any increased assessment

which might be necessary on account thereof; but not having complied with the by-laws of the society, having made no application for a "Hazardous Occupation Certificate," he was in no position to tender the additional assessment, and the information conveyed was without effect under the circumstances of this case. The Camp Clerk did not accept the offer of the additional amount, and the insured was not misled in any particular by the conduct of the company or its agent. He could not have known anything about what transpired at the time of the payment of the assessment, which was made in Denver, January 31, 1912, as the accident which resulted in his death occurred in California only two days later. The local clerk, while he was informed of the change in occupation, did nothing to even suggest that the company would waive its right of exemption from liability in case the insured was killed as a direct result of engaging in his new occupation. He simply accepted the customary and ordinary assessment, as it was undoubtedly his duty to do, and had Ford died from natural causes, or from accident other than that directly traceable to any of the hazardous occupations mentioned in the by-laws, the company would have been liable under its contract; but here the plaintiff is endeavoring to hold the defendant liable under the terms of a "Hazardous Occupation Certificate," when the insured never applied for or received such a certificate, and when the original certificate stipulates against such liability.

We are of the opinion that under the facts and circumstances of this case, there was clearly no waiver of the right to insist on the exemption from liability, under the terms of the contract, and defendant cannot be held liable for the payment of this loss. Among the authorities sustaining this view are: Showalter v. Modern Woodmen, 156 Mich. 390, 120 N. W. 994; Modern Woodmen v. Talbot, 76 Neb. 621, 107 N. W. 790; Crites v. Modern Woodmen, 82 Neb. 298, 117 N. W. 776; Abell v. Modern Woodmen, 96 Minn. 494, 105 N. W.

65, 906; *Modern Woodmen v. Weekley,* 42 Okla. 25, 139 Pac. 1138.

The judgment of the lower court will be affirmed.

*Affirmed.*

Decision *en banc.*

Mr. JUSTICE SCOTT dissents.